# COURT OF APPEALS OF VIRGINIA

## Record No. 0157-25-1

THOMAS WEIKEL, ET AL.
v.
GLEN EAST, ET AL.

Present: Judges Ortiz, Chaney and Frucci

Argued at Virginia Beach, Virginia

Opinion Issued June 30, 2026[*]

## FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Joseph C. Lindsey, Judge

Gregory S. Larsen (Larsen Carnes, P.C., on briefs), for appellants.

Joseph V. Sherman (William B. Newman; Poole Brooke Plumlee, P.C., on brief), for appellees.

## MEMORANDUM OPINION BY
### JUDGE DANIEL E. ORTIZ

Thomas Weikel and Alexander E. Fucito, Jr., as the Executor of the Estate of Cate McCoy, (collectively "the Weikels"), appeal the circuit court's $300,000 judgment for compensatory and punitive damages to Glen and Patricia East for property damage.[1]  On appeal, the Weikels challenge the sufficiency of the evidence and argue that the statute of limitations barred the suit.  The Weikels also dispute the circuit court's evidentiary rulings and jury instructions.  But finding no error, we affirm the circuit court's judgment.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Cate McCoy is Weikel's late wife.  She died during the pendency of this litigation, and Alexander E. Fucito, Jr., was substituted as the executor of her estate.

BACKGROUND[2]

The Easts owned a home adjoining the Chesapeake Bay in the City of Norfolk. A cinderblock wall marked the boundary line between the home and the neighboring vacant sand dune. The Weikels purchased the empty lot in 2013. After receiving a home building permit in 2017, the Weikels began construction. Before the Weikels built their home, an equal amount of soil sat along the bottom of both sides of the boundary wall, which appeared plumb and straight. During construction, the Weikels' builder leveled the sand dune to lay a foundation and used heavy machinery to assemble the modular home on site. As a result, the soil packed up against the Weikel side of the boundary wall all the way to the top, while the soil level on the Easts' side of the boundary wall remained at the bottom. Construction on the Weikels' property concluded in 2018.

Given the ground disparity that the construction had created between the properties, the Easts wanted to prevent sand traveling onto their property. The Easts were also concerned that someone falling from the Weikel side of the wall could be injured. So, the Easts planned to add four layers of cement block to the existing boundary wall. After hiring a brick mason to perform the work, the Easts learned that the wall was leaning. The brick mason offset the blocks toward the Weikel home to address that issue.

In 2022, the Easts noticed stairstep cracks and bowing on their side of the boundary wall. They contacted W. Carter Sinclair, a structural engineer, to inspect the wall and address any instability. Sinclair concluded that the Easts would have to replace the existing boundary wall with a retaining wall to "prevent either a collapse or more lateral movement." He opined that a change in grade of sand or dirt against one side of the wall would cause a lateral pressure pushing in the opposite direction, which was why the wall now leaned towards the Easts' home. He further

---

[2] Under settled principles, we recite the relevant facts in the light most favorable to the Easts, who prevailed below. *Agnew v. United Leasing Corp.*, 80 Va. App. 612, 619 (2024).

explained that the additional blocks that the Easts added to the top of the wall did not have any effect on the lateral pressure and may have helped to stabilize the wall.

Sinclair recommended bracing the wall to prevent it from collapsing in the short term while they prepared to replace it. The Easts braced the boundary wall with pressure-treated wood to prevent the wall from moving any further before the construction. The Easts hired Sherry Construction—at Sinclair's recommendation—to complete the complex project. The Easts also informed the Weikels in writing several times about the wall and requested partial reimbursement, as their home construction had displaced the sand dune and caused the pressure issues. The parties never reached an agreement. Concerned for their safety, the Easts proceeded with removing the wall.

After the Easts began removing the wall, the Weikels hired workers to dig out sand behind their side of the wall to form a trench. The workers dug the trench with shovels, then used an excavator to remove the excess sand away from the wall. They then placed the excess sand behind the supports on the Weikels' deck, pushing the supports out of the foundation. After the Weikels learned of the instability, they stopped digging the trench and tied a two-by-six piece of lumber to the deck support. The deck remained in this condition for several weeks until the Easts reported the instability to the City. The City sent out an inspector who issued a stop work order. In January 2023, three days after the stop work order, the Weikels hired workers to return the excess sand to the trench. During that work, the Easts' wall collapsed into the gas meter.

Despite the collapse, the Weikels continued to fill the trench with sand. When the Easts called the fire department, the Weikels dismissed the workers. After this incident, the Easts called the City about the Weikels' deck, and the City issued another stop work order. The Easts then hired a general contractor to remove the remaining wall, clean up the collapsed wall, and build a new reinforced wall. They had to obtain an emergency injunction from the circuit court to allow them

the necessary access to the Weikels' property to build the new wall. In total, the project cost the Easts $90,882.25.

On April 12, 2023, the Easts sued the Weikels for negligence, private nuisance, and intentional trespass.[3] The Easts sought $100,000 in compensatory damages for the repair of the property, and $350,000 in punitive damages for the Weikels' willful misconduct.[4] A pretrial scheduling order required the parties to designate experts during discovery, including a summary of the subject matter, the facts and opinions, and the grounds for each opinion. The scheduling order expressly prohibited undisclosed opinions at trial. The Weikels designated Danny W. Speight as an expert in their discovery response. The disclosure stated that Speight would explain the reasons for the boundary wall's collapse. The designation cited "his education, training, and experience as a structural engineer" as the basis for his opinions, which he held "to the requisite degree of engineering probability."

The parties litigated several pretrial motions. The Weikels filed a plea in bar asserting that the one-year statute of limitations barred the property damage suit. At the plea-in-bar hearing, the Weikels called Robert Tajan, Director of City Planning for the City of Norfolk, who explained about the building permitting and approval process for the City. Tajan stated that several departments check the grading at the site of a building project before issuing a certificate of occupancy. The Weikels also presented evidence of their building plan including the approved certificate of occupancy. John Glover, the Weikels' general contractor, testified that he graded their lot before November 2017. At the conclusion of the evidence, the Weikels argued that the damages in the suit are ongoing from the date of the improper grading of their property, which occurred in

---

[3] The Easts also sued the Weikels for breach of duty to provide lateral support and requested an injunction, but later withdrew those claims.

[4] The Weikels sought compensatory damages in their initial complaint, later amending their complaint to specify the amount of $100,000.

2017; thus, they alleged that the statute of limitations barred the suit. In response, the Easts argued that the statute of limitations for property damage started in January of 2023 when the Weikels' negligence damaged their property. The circuit court overruled the plea in bar, reasoning that even if the Weikels' improper grading of their property later caused the Easts wall to fail, the cause of action did not accrue until the Easts suffered that damage. The circuit court found that the Weikels failed to meet their burden of proof, and that the Easts alleged "separate and distinct wrongdoings" that occurred after 2018.

At the subsequent jury trial, the Easts presented the aforementioned evidence. Their expert, W. Carter Sinclair, opined that the East's wall was cracking because the Weikels' side exerted too much force on it. The difference in soil levels caused lateral pressure on one side of the wall, thus pushing the wall. Sinclair also opined that the additional rows of blocks did not contribute to the wall's collapse. The Easts also testified to the emotional impact the property loss had caused them. After its collapse, Patricia was so upset she was unable to continue working as a real estate agent.

After the Easts rested, the Weikels moved to strike, arguing that the evidence failed to establish the tort claims, damages, or willful conduct; they also resubmitted that the claims were barred by the statute of limitations. The circuit court denied the motion.

Weikel gave conflicting testimony about how and why he dug the trench in December 2022 and disputed his earlier deposition testimony on that issue. His expert, Speight, opined that the wall was unreinforced, and the additional blocks added to the top put excessive force on the wall because of the wind. Speight also testified that he had calculated the load on the wall and had provided those calculations to the Weikels before trial. After Speight finished testifying, the Easts moved to sanction the Weikels and strike Speight's testimony for failing to provide the calculations in discovery. The Weikels responded that Speight had not provided any calculations and that the

- 5 -

objection was untimely. The circuit court granted the sanction motion and instructed the jury to disregard Speight's testimony.

The jury awarded the Easts $100,000 in compensatory damages and $200,000 in punitive damages. The Weikels moved to set aside the verdict and for mistrial, which the circuit court denied. The Weikels now appeal.

ANALYSIS

I. Statute of Limitations

"Our review of a trial court's determination of the correct statute of limitations presents a question of law that we review de novo." *William H. Gordon Assocs. v. Heritage Fellowship*, 291 Va. 122, 137-38 (2016) (quoting *Willard v. Moneta Bldg. Supply*, 262 Va. 473, 477 (2001)). The Weikels presented evidence on this issue ore tenus, so "the circuit court's factual findings are accorded the weight of a jury finding and will not be disturbed on appeal unless they are plainly wrong or without evidentiary support." *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019) (quoting *Hawthorne v. VanMarter*, 279 Va. 566, 577 (2010)).

The Easts' property damage claim had a five-year limitations period. Code § 8.01-243(B). The Easts filed this action in April 2023, so their claims were time-barred only if they accrued before April 2018. A cause of action for property damage accrues "when the first measurable damage occurs." *Forest Lakes Cmty. Ass'n v. United Land Corp. of Am.*, 293 Va. 113, 123 (2017). "If the wrongful act is of a permanent nature and one that produces 'all the damage which can ever result from it, [then] the entire damages must be recovered in one action,' and the statute of limitations begins to run from the date of the wrongful act." *Hampton Rds. Sanitation Dist. v. McDonnell*, 234 Va. 235, 239 (1987) (quoting *Norfolk & W.R. Co.* v. *Allen*, 118 Va. 428, 435 (1916), *aff'g on rehearing*, 118 Va. 428 (1915)). "Conversely, when wrongful acts are not

continuous but occur only at intervals, each occurrence inflicts a new injury and gives rise to a new and separate cause of action." *Id.*

We reject the Weikels' contention that the claim accrued in 2017 when the builder improperly graded their lot, resulting in increased pressure against the Easts' boundary wall. The increased pressure, alone, was not a measurable harm, as it caused no functional damage to the Easts' property. The measurable harm in this case—the wall's *collapse*—occurred in 2022, after the Weikels improperly dug and refilled a trench. The Easts filed their property damage suit in 2023, well within the limitations period. Accordingly, the circuit court's judgment overruling the plea in bar was not "plainly wrong or without evidentiary support." *Massenburg*, 298 Va. at 216 (quoting *Hawthorne*, 279 Va. at 577).

## II. Discovery Sanction

"The Supreme Court has made clear that '[a] trial court generally exercises "broad discretion" in determining the appropriate sanction for failure to comply with an order relating to discovery.'" *Stark v. Dinarany*, 73 Va. App. 733, 745 (2021) (quoting *Walsh v. Bennett*, 260 Va. 171, 175 (2000)). "Because the trial court 'exercises broad discretion in determining the appropriate sanction,' this Court reviews its decision for an abuse of discretion." *Galloway v. Cnty. of Northampton*, 299 Va. 558, 563 (2021) (quoting *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)). "When we say that a circuit court has discretion, we mean that 'the [circuit] court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" *Galiotos v. Galiotos*, 300 Va. 1, 10 (2021) (quoting *Landrum,* 282 Va. at 352). "Thus, only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Id.* at 11 (quoting *Sauder v. Ferguson*, 289 Va. 449, 459 (2015)).

The pretrial scheduling order required the Weikels to provide a summary of Speight's testimony and opinions, as well as the grounds for those opinions, 90 days before trial. The order prohibited nondisclosed opinions at trial. The Weikels designated Speight as an expert and disclosed that he would testify about the reasons for the boundary wall's collapse. At trial, Speight testified that he formed his opinion about the cause of the collapse based, in part, on his calculations of the load on the wall. Yet, his expert designation failed to provide the Easts with the purported calculations Speight used to form his opinion. The circuit court was well within its authority to sanction the Weikels for the nondisclosure by instructing the jury to disregard Speight's testimony.

The Weikels contend that the Easts' objection to Speight's testimony was untimely. It is true that "[a]n objection to the admissibility of evidence must be made when the evidence is presented." *Butler v. Stegmaier*, 77 Va. App. 115, 125 (2023) (quoting *Bitar v. Rahman*, 272 Va. 130, 139 (2006)). We apply this rule to "[o]bjections to the testimony of an expert witness on grounds of speculation, reliability, lack of adequate foundation, failure to consider all relevant variables, improper methodology, or failure to offer the opinion with a reasonable degree of professional certainty[.]" *Id.* (citing *Bitar*, 272 Va. at 138-39). But these are *admissibility* issues; timely objections permit the party proffering the evidence the opportunity to rehabilitate the testimony in response. The Easts did not object to Speight's testimony on admissibility grounds; they moved the circuit court to *sanction* the Weikels for failing to disclose the calculations supporting Speight's opinion, as revealed during the testimony. Such disclosure was required at least three months before the trial, making the discovery violation unfixable. Thus, we decline to apply precedent governing the timeliness of admissibility objections to the sanction motion the Easts interposed in this case.

### III. Sufficiency of the Evidence

"It is well-settled that 'a party who comes before us with a jury verdict approved by the circuit court "occupies the most favored position known to the law."'" *N. Va. Kitchen, Bath & Basement, Inc. v. Ellis*, 299 Va. 615, 622 (2021) (quoting *Ravenwood Towers, Inc. v. Woodyard*, 244 Va. 51, 57 (1992)). "As a general rule, [w]e will not set aside a [circuit] court's judgment sustaining a jury verdict unless it is 'plainly wrong or without evidence to support it.'" *Id.* (alterations in original) (quoting *Parson v. Miller*, 296 Va. 509, 523-24 (2018)). Accordingly, we "consider whether the evidence presented, taken in the light most favorable to the plaintiff, was sufficient to support the jury verdict in favor of the plaintiff.'" *Sroufe v. Waldron*, 297 Va. 396, 397 (2019) (quoting *Bitar*, 272 Va. at 141). "Unless the award 'is so excessive as to shock the conscience . . . or to create the impression that the jury was influenced by passion or prejudice, a verdict approved by the trial court will not be disturbed on appeal.'" *Nestler v. Scarabelli*, 77 Va. App. 440, 462 (2023) (alteration in original) (quoting *Gazette, Inc. v. Harris*, 229 Va. 1, 41 (1985)).

The Weikels argue that the evidence was insufficient to award compensatory or punitive damages on the Easts' negligence, private nuisance, and intentional trespass claims. We disagree and conclude that the circuit court's judgment sustaining the jury verdict was not "plainly wrong or without evidence to support it." *N. Va. Kitchen, Bath & Basement, Inc.*, 299 Va. at 622 (quoting *Parson*, 296 Va. at 523-24).

### A. Negligence

"The elements of an action in negligence are a legal duty on the part of the defendant, breach of that duty, and a showing that such breach was the proximate cause of injury, resulting in damage to the plaintiff." *Al-Saray v. Furr*, 304 Va. 19, 28 (2025) (quoting *Blue Ridge Serv. Corp. v. Saxon Shoes, Inc.*, 271 Va. 206, 218, 624 (2006)). "General negligence principles

require a person to exercise due care to avoid injuring others." *Shoemaker v. Funkhouser*, 299 Va. 471, 478 (2021) (quoting *RGR, LLC v. Settle*, 288 Va. 260, 275 (2014)). The common law requires that "every person [must] exercise ordinary care in the use and maintenance of his own property to prevent injury to others." *Id.* at 478 (alteration in original) (quoting *Quisenberry v. Huntington Ingalls Inc.*, 296 Va. 233, 242 (2021)). "The duty, however, is 'not abstract: a specific course of conduct gives rise to a specific duty extending to specific persons.'" *Id.* (quoting *Quisenberry*, 296 Va. at 242). "Negligence carries with it liability for consequences that, in view of the circumstances, could reasonably have been anticipated by a prudent person." *Llewellyn v. White*, 297 Va, 588, 597 (2019) (quoting *Interim Pers. of Cent. Va., Inc. v. Messer*, 263 Va. 435, 442 (2002)).

Proximate cause is an "act or omission which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred." *Id.* (quoting *Beale v. Jones*, 210 Va. 519, 522 (1970)). "Importantly, proximate cause may be established by circumstantial evidence, provided that such evidence is 'sufficient to show that the causation alleged is "a probability rather than a mere possibility."'" *Id.* (quoting *Bussey v. E.S.C. Rests. Inc.*, 270 Va. 531, 536 (2005)). "Issues of negligence and proximate causation ordinarily are questions of fact for the jury's determination. A court decides these issues only when reasonable persons could not differ." *Dorman v. State Indus., Inc.*, 292 Va. 111, 122 (2016) (quoting *Atkinson v. Scheer*, 256 Va. 448, 453-54 (1998)). After establishing negligence, the plaintiff is entitled to compensatory damages, which serve "to compensate a 'plaintiff for all losses suffered by . . . the defendant's breach of some duty imposed by law to protect the broad interests of social policy.'" *Nestler*, 77 Va. App. at 464 (quoting *Kamlar Corp. v. Haley*, 224 Va. 699, 706 (1983)).

The evidence presented at trial permitted the jury to conclude that the Weikels' negligence caused the Easts' boundary wall to collapse, resulting in compensable damages. The Weikels destabilized the wall by digging a trench next to it, then repouring sand onto the wall. In the middle of this construction, the boundary wall collapsed onto the Easts' gas line. Sinclair opined that a change in grade on one side of the wall caused a lateral pressure pushing the opposite side of the wall, which supported the inference that the Weikels' actions caused the boundary wall collapse. Accordingly, the evidence supports the jury's conclusion that the Weikels breached their duty of ordinary care and negligently damaged the Easts' property.

### B. Private Nuisance

A nuisance is "everything that endangers life or health, or obstructs the reasonable and comfortable use of property." *Collett v. Cordovana*, 290 Va. 139, 145 (2015) (quoting *Nat'l Energy Corp. v. O'Quinn*, 223 Va. 83, 85 (1982)). "[W]e broadly construe an occupant's right to the use and enjoyment of land." *Id.* (quoting *Bowers v. Westvaco Corp.*, 244 Va. 139, 144 (1992)). This right includes "the pleasure, comfort and enjoyment that a person normally derives from the occupancy of land." *Id.* at 146 (quoting *Bowers*, 244 Va. at 145). "The discomfort and annoyance must, however, be significant and of a kind that would be suffered by a normal person in the community." *Id.* Once the nuisance is established, "an owner *or* occupant of land has a right to recover against the operator of a private nuisance." *Bowers*, 244 Va. at 148. The plaintiff may recover damages for diminished value of realty and "compensation for physical or emotional injuries." *Id.*

The record here supports the jury's finding that the Weikels' actions endangered the Easts' health and disturbed their use and occupation of their property. Knowing that the wall was unstable and near the gas meter, the Weikels endangered the Easts' health and safety by throwing sand back into a trench they had dug next to the wall. In addition to the danger to their

- 11 -

health and safety, Glen East recounted the emotional toll that the wall's instability had on them. He explained that after the wall's collapse, his wife suffered significant emotional distress, crying frequently and unable to work. He also noted that they were uncomfortable spending time outside on their deck because of its proximity to the Weikels. These facts permitted the jury to conclude that the Weikels created a nuisance on the East' property, so the Easts were entitled to compensation for the physical and emotional injuries that they sustained as a result.

## C. Intentional Trespass

"[A]n action for common law trespass to land derives from the 'general principle of law [that] every person is entitled to the exclusive and peaceful enjoyment of his own land, and to redress if such enjoyment shall be wrongfully interrupted by another.'" *Kurpiel v. Hicks*, 284 Va. 347, 353 (2012) (second alteration in original) (quoting *Tate v. Ogg*, 170 Va. 95, 99 (1938)). "[A] trespass is an unauthorized entry onto property which results in interference with the property owner's possessory interest therein." *Cooper v. Horn*, 248 Va. 417, 423 (1994) (alteration in original) (quoting 5 Richard R. Powell, *The Law of Real Property* 707 (Patrick J. Rohan ed., 1994)). "[T]o recover for trespass to land, a plaintiff must prove an invasion that interfered with the right of exclusive possession of the land." *Collett*, 290 Va. at 145 (alteration in original) (quoting *Kurpiel*, 284 Va. at 353-54). "Any physical entry upon the surface of the land constitutes such an invasion, whether the entry is a walking upon it, flooding it with water, casting objects upon it, or otherwise." *Kurpiel*, 284 Va. at 354 (quoting *Cooper*, 248 Va. at 423). Damages for trespass are calculated as "either the difference in market value of the property before and after the trespass or the cost of restoring the property to its former condition, but only if the cost measure of damages is less than the market value measure of damages." *Klaiber v. Freemason Assocs.*, 266 Va. 478, 485 n.2 (2003).

Sinclair testified that the wall was weakened because the soil and sand level on one side of the wall was higher than the other. The Easts might have partially stabilized the wall by adding blocks on top, but ultimately, the wall weakened from the constant lateral pressure. The record supports the jury's conclusion that the wall then fell because the Weikels dug a trench right next to it, which compromised the structural integrity of the wall by changing the lateral pressure. The Weikels then aggravated that instability by putting sand against the wall to alleviate the pressure on their deck. These acts culminated in the wall collapsing onto the Easts' property, thus invading their property and interfering with their property interests.

### D. Compensatory Damages

A plaintiff may recover damages after establishing claims of negligence, nuisance, or trespass. An individual is entitled to compensation for losses from negligence or trespass but may also recover for emotional injuries in a nuisance claim. *See Nestler*, 77 Va. App. at 464 (quoting *Kamlar Corp.*, 224 Va. at 706); *Bowers*, 244 Va. at 148; *Nat'l Energy Corp.*, 223 Va. at 85; *Klaiber*, 266 Va. at 485 n.2.[5]

At trial, the Easts requested $90,000 in compensatory damages for the costs associated with replacing the boundary wall, and $10,000 for emotional distress. After deliberation, the jury awarded the Easts $100,000 in compensatory damages.

---

[5] On appeal, the Weikels argue the Easts "failed to prove the correct measure of damages and failed to prove any proper damages." The trial court instructed the jury: "When personal property is totally damaged, the measure of damages is the difference in the value of the property immediately before and immediately after the accident, plus the necessary and reasonable expenses incurred by the plaintiff as a result of the damage to the property." While the Weikels now argue that the Easts "failed to prove the correct measure of damages," they did not object to the trial court's instruction providing the jury with the measure of damages. To the extent that their argument on appeal challenges the measure of damages as provided in the jury instructions, "instructions given without objection become the law of the case and thereby bind the parties in the trial court and on [appellate] review." *Boyd v. Weisberg*, 75 Va. App. 725, 736-37 (alteration in original) (2022) (quoting *Smith v. Commonwealth*, 296 Va. 450, 461 (2018)). Even if a party objects to the jury's verdict after the fact, as the Weikels did here, "this does not save him from

Contrary to the Weikels' argument, that award was not plainly wrong. Sinclair testified that a retaining wall was necessary to replace the boundary wall because of the change in grade on the Weikels' side of the wall. The Easts introduced evidence of the costs associated with replacing the boundary wall with a retaining wall, which totaled around $90,882.25. Glen East also testified that the collapse of the boundary wall affected his wife emotionally, she "cried for two weeks." Given the evidence of actual losses and emotional suffering, we find no abuse of discretion by the circuit court affirming the jury's $100,000 compensatory damages award.

### E. Punitive Damages

"Punitive or exemplary damages are allowable . . . where there is misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others." *Giant of Va., Inc. v. Pigg*, 207 Va. 679, 685 (1967). "Punitive damages are subject to 'the jury's discretion because there is no set standard for determining the amount of punitive damages.'" *Nestler*, 77 Va. App. at 462 (quoting *Coalson v. Canchola*, 287 Va. 242, 249 (2014)). "Unless the award 'is so excessive as to shock the conscience . . . or to create the impression that the jury was influenced by passion or prejudice, a verdict approved by the trial court will not be disturbed on appeal.'" *Id.* (alteration in original) (quoting *Gazette, Inc.*, 229 Va. at 41).

The record evidence supports the jury's conclusion that the Weikels' actions displayed a conscious disregard for the Easts' rights. The Easts presented evidence that the Weikels knew that the boundary wall was failing and that they had braced their gas meter to prevent damage if the walls collapsed. Despite that knowledge, Weikel dug a trench next to the failing boundary wall to

his failure to object to the instructions which submitted the issues . . . to the jury." *Id.* at 737 (quoting *Spitzli v. Minson*, 231 Va. 12, 19 (1986)). "Since jury instructions and verdict forms agreed to by both parties become the law of the case, 'we consider whether the evidence was sufficient to support [the judgment] based on the instructions given.'" *Id.* (quoting *Smith*, 296 Va. at 462).

build his own retaining wall. He put the sand from the trench behind his deck footers, which came out of place and caused the deck to sink. Weikel then pitched the sand back into the trench, causing the Easts' boundary wall to fall. Weikel continued to throw sand on the wall even after the wall had started to collapse. Worried about their gas line, the Easts called the fire department, at which time Weikel dismissed his workers. Given the Weikels' willful conduct, knowing the risks involved, the $200,000 award for punitive damages was not plainly wrong.

### III. Waived Arguments

"Rule 5A:20(e) requires that an appellant's opening brief contain [t]he principles of law, the argument, and the authorities relating to each question presented. Unsupported assertions of error do not merit appellate consideration." *Bartley v. Commonwealth*, 67 Va. App. 740, 744 (2017) (alteration in original) (quoting *Jones v. Commonwealth*, 51 Va. App. 730, 734 (2008)). "[W]here a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Id.* at 746 (quoting *Sneed v. Bd. of Pro. Resp. of the Sup. Ct. of Tenn.*, 301 S.W.3d 603, 615 (Tenn. 2010)). Referring to a single case and failing to support arguments "with any legal analysis or authority from [that case] or any other source" constitutes a failure to comply with Rule 5A:20(e). *Id.* at 745-46.

The Weikels' remaining arguments challenge the admissibility of several exhibits and the circuit court's jury instruction rulings. But the Weikels' brief failed to cite supporting principles of law or authorities for these claims. The Weikels' entire argument regarding the admissibility of the exhibits is mere conclusory sentences without legal support. Although the Weikels provided a citation for the standard of review regarding jury instructions, they failed to provide any additional legal analysis on the specific arguments presented. In sum, the arguments sections in support of these assignments of error cite to no authority in support of their arguments and instead are riddled with conclusory assertions and requests for relief.

As a court of review, we are "entitled to have the issues clearly defined and to be cited pertinent authority. The appellate court is not a depository in which the appellant may dump the burden of argument and research." *Ceres Marine Terminals v. Armstrong*, 59 Va. App. 694, 708 (2012) (quoting *Fadness v. Fadness*, 52 Va. App. 833, 850) (2008)). The skeletal arguments posited by the Weikels leave this Court "without a legal prism through which to view" the alleged errors. *Bartley*, 67 Va. App. at 746. Consequently, their brief does not comply with Rule 5A:20(e) and that failure is significant, so these arguments are waived. *Id.*

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*